[Crim. No. 34541. Second Dist., Div. Five. Nov. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIANA JASMINE JARAMILLO, Defendant and Appellant.

COUNSEL

Marks, Green & Denbo, Burton Marks and Stephen Gilbert for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—Appellant, after waiving trial by jury, was found guilty by the court in two counts of violating Penal Code section 273a,

subdivision (1) (felony child endangering) and that in the commission of the offenses she used a deadly and dangerous weapon, to wit, a wooden dowel, said use not being an element of the offenses charged, within the meaning of Penal Code section 12022, subdivision (b). The court further found she committed great bodily injury as to her daughter Sheri Banuelos (Pen. Code, § 12022.7) but did not commit great bodily injury as to her other daughter Sonia Banuelos. This appeal is taken from the judgment (order granting probation).

Appellant contends:

1. The injuries sustained by appellant's children were not sufficiently serious to support the trial court's finding that her violation of section 273a was "likely to produce great bodily harm" and it was thus improper to find that violation to be a felony rather than a misdemeanor.

2. The injuries sustained by Sheri Banuelos were not sufficiently serious to support the trial court's finding that appellant inflicted great bodily injury upon her within the meaning of Penal Code section 12022.7.

3. Penal Code section 12022.7 cannot be relied upon to enhance the punishment of a person convicted of a felony violation of Penal Code section 273a for the infliction of great bodily injury is an element of section 273a.

4. The stick with which appellant struck her daughters was not a deadly weapon within the meaning of Penal Code section 12022, subdivision (b).

We view the evidence in the light most favorable to the judgment as is required by the familiar rule governing appellate review. (*People* v. *Henderson,* 19 Cal.3d 86, 97 [137 Cal.Rptr. 1, 560 P.2d 1180].)

On March 2, 1978, Vernon Foster, school principal at the school attended by Sheri, observed her in the cafeteria during lunch. She caught his attention because she appeared to have a "look of anguish" on her face. Mr. Foster took no further action at that time but after lunch he again observed Sheri when she was sent to his office possibly by a teacher. He observed that the backs of the child's hands were swollen and discolored. Sheri recalled that the day before when her mother (ap-

pellant) had been away from the home DeNay, a friend of the Banuelos girls, had come to visit. When appellant returned she discovered a birthday gift for her daughter Sonia had been opened. She asked her daughters which one had opened the gift and both denied doing so. Appellant told Sheri to get the stick which the child retrieved from behind the couch. Appellant then "swacked" them with the stick, Sonia on the arm and Sheri on the arm and buttocks. Sheri could not recall how many times she was hit. Finally, Sheri said that she had opened the gift so that her mother would stop hitting her.

Afterward appellant told Sheri to clean the bathroom. When she was done, the child put a wet towel on her sister's drawer. For this offense, Sheri was hit on her buttocks again with the same stick by appellant. When she tried to shield her bottom with her hands, they were also hit. Sheri indicated that being hit hurt her very much.

Mr. Foster then called the police to the school to look at the child. A community aid at the school visually examined Sheri before the police arrived. Subsequently Sheri's sister Sonia was also brought to the office. The community aid accompanied the child to the nurse's office for an examination. En route she attempted to touch Sheri's shoulder to guide her to the office but the little girl flinched or turned away saying that "it hurt."

Richard Vance, a Montebello police officer assigned to the juvenile bureau, went to the school to conduct the investigation concerning the Banuelos girls. There he spoke to appellant who said that she had punished Sheri for putting cooking oil in the baby's bottle and for opening her sister's birthday gift. At a subsequent interview in the home, Officer Vance asked appellant what she had used to strike Sheri with and was shown an 18- to 20-inch long, 1 inch in diameter stick which appellant removed from the kitchen window sill. (Peoples' exhibit 1.) Sheri and Sonia were taken to the police station in Montebello where photographs were taken depicting their condition. (Peoples' exhibits 2A, 2B and 4.)

Appellant's defense was that she disciplined her daughters and used the stick to hit the girls but she had hit Sheri twice on the arm and Sonia once. She stated that she was not angry when she struck the blows nor did she use "that much force." Later in the same day she again disciplined Sheri and made Sheri pull her pants down and then with the same stick she hit her four or five times. She was aiming for her behind

but at times the child's hands were in the way. Appellant admitted that she was angry and that she had used more force than she had that afternoon but she denied that she was trying to injure Sheri. She did not believe the stick would harm the child and while she knew that Sheri had bruises she did not think they required medical attention as she did not consider them an injury. In any event she said Sheri did not complain to her of any physical pain.

In rebuttal, the People offered the records of medical treatment of Sheri and Sonia taken on March 2, 1978, at Beverly Hospital in Montebello. In addition to a description of the physical condition of each girl, the final diagnosis on both reports was "probable child abuse."

1. ■ Appellant's first argument is that the injuries sustained by her children were not sufficiently serious to support the court's finding that her violation was "likely to produce great bodily harm." She cites *People* v. *Caudillo,* 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], for the proposition that neither rape, sodomy nor superficial lacerations on a person's neck are "great bodily injury" because they are not "significant or substantial physical injuries." She claims that the injuries sustained by the girls here like those sustained by the victim in *Caudillo* "can logically only be described as constituting transitory and short-lived bodily distress." (*Id.* at p. 588.) Appellant's argument is misplaced. Section 273a provides for felony punishment where certain actions are committed "under circumstances or conditions likely to produce great bodily harm or death." A misdemeanor status is to those acts committed "under circumstances or conditions other than those likely to produce great bodily harm or death." For the felony punishment there is no requirement that the actual result be great bodily injury. The statute is intended to protect a child from an abusive situation in which the probability of serious injury is great.

In the instant case the appellant used a wooden stick 18 to 20 inches long and about an inch in diameter to strike repeatedly her young daughters on different parts of their bodies. Sheri, the six-year-old was subjected to even more blows that same night by appellant who admittedly used even more force than she had used to administer the first set of blows. Under these circumstances the trial court could and did properly find that appellant's actions were committed under conditions likely to produce great bodily harm. There was no error.

2. Penal Code section 12022.7 provides for the imposition of enhanced punishment upon persons inflicting "great bodily injury" during the commission of felonies. Appellant contends that the injuries sustained by Sheri were not "great bodily injury." In *People* v. *Caudillo, supra,* at page 581, the court discusses in great detail the definition of "great bodily injury" within the context of section 12022.7. As originally enacted in 1976, the level of injury necessary to trigger the additional penalty of three years was "'As used in this section, "great bodily injury" means a serious impairment of physical condition, which includes any of the following: [¶] (a) Prolonged loss of consciousness. [¶] (b) Severe concussion. [¶] (c) Protracted loss of any bodily member or organ. [¶] (d) Protracted impairment of function of any bodily member or organ or bone. [¶] (e) A wound or wounds requiring extensive suturing. [¶] (f) Serious disfigurement. [¶] (g) Severe physical pain inflicted by torture.'"

The Penal Code section was amended in 1977 by striking out the *detailed* definition of "great bodily injury" and substituting the following definition: "As used in this section great bodily injury means a significant or substantial physical injury." The court then stated that the amendment was not intended to lessen the magnitude of bodily injury but was designed to preclude the possibility that the 1976 detailed definition might be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein.

In our present case the testimony and exhibits display that Sheri suffered multiple contusions over various portions of her body and the injuries caused swelling and left severe discoloration on parts of her body. The injuries were visible the day after infliction to at least two lay persons at Sheri's elementary school. Further, there was evidence that Sheri suffered pain as a result of her injuries because a day later she had a "look of anguish" on her face and she flinched or turned away from a simple guiding touch on the shoulder by the community aid and Sheri informed her that "it hurt" as they walked to the nurse's office.

A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly it is the trier of fact that must in most situations make the determination. Here, while the issue might be close it appears that there were sufficient facts upon which the court could base its finding of great bodily injury and such a finding therefore will not be disturbed on appeal.

3. ■ Appellant argues that section 12022.7 does not apply to felonies of which great bodily injury is an element. Therefore, imposition of the enhanced punishment was error.[1] As pointed out however, earlier in this opinion, section 273a does not focus upon the actual injury produced by the abusive actions but rather upon whether or not the attendant circumstances make great bodily injury likely. Occurrence of great bodily injury is not necessary to find a violation of the section, therefore it is not an element of the offense. Appellant's argument must therefore fail.

4. ■ Appellant's last argument is that the stick used to administer the discipline was not a deadly weapon within the meaning of Penal Code section 12022, subdivision (b). A deadly weapon is one likely to produce death or great bodily injury. Whether a particular weapon fits this description is a question of fact. (*People* v. *Moran,* 33 Cal.App.3d 724, 730 [109 Cal.Rptr. 287].) Even where the instrumentality used is not a "weapon" in the strict sense of the word, nevertheless if it is capable of being used in a dangerous or deadly manner and it is so used or it may be inferred from the evidence concerning its use, the character as a dangerous or deadly weapon may be established. (*Id.* at p. 730.)

The medical records state that there were multiple contusions on Sheri, abrasions and swelling, all caused by the stick and these injuries were still evident the day after the blows had been administered. To a lesser degree but still severe were the injuries to Sonia. Accordingly, there was sufficient evidence from which the court could and did properly find that appellant had used the stick as an offensive instrumentality in such a manner that its character as a dangerous or deadly weapon was established.

The judgment (order granting probation) is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied December 12, 1979, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1980.

---

[1]Penal Code section 12022.7 provides in pertinent part as follows: "Any person who ...personally inflicts great bodily injury on any person...in the commission...of a felony shall, in addition and consecutive to the punishment prescribed for the felony...of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted."