[No. B126876. Second Dist., Div. Four. July 28, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ALIKHBAN PEREZ et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II-VI of the Discussion.

## COUNSEL

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant Alikhban Perez.

Scott L. Fielder, under appointment by the Court of Appeal, for Defendant and Appellant Josue Aguilar.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

This case involves a gang-related drive-by murder. A jury convicted appellants Alikhban Perez and Josue Aguilar of first degree murder and the special circumstance that the murder was committed by discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with intent to kill. (Pen. Code, §§ 189, 190.2, subd. (a)(21).) The jury also found the crime was committed for the benefit of a criminal street gang (Pen. Code, § 186.22), that Perez personally used a firearm (Pen. Code, § 12022.5), and as to Aguilar that a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)). The court sentenced each to life imprisonment without the possibility of parole, plus two years for the gang enhancement, plus four years as to Perez for personally using a firearm.

Appellants raise numerous contentions, mostly relating to admission or exclusion of evidence, or the sentence. We affirm after modifying the judgments to strike the two-year gang enhancements which the People concede cannot be imposed. In the published portion of this opinion, we hold that a criminal defendant is not denied the constitutional right to confront a witness when the witness is present at trial and subjected to unrestricted cross-examination but answers "I don't remember" to virtually all questions.

### FACTS

Appellants are members of the Pierce Street gang, centered around 12601 Pierce Street in Pacoima. The Pierce Street gang was at war, involving weekly shootings, with the Project Boyz gang, centered around the San Fernando Gardens Housing Project (the Project) about one-half mile away. The layout of the Project encourages drive-by shootings as the safest way for the Pierce Street gang to attack the Project Boyz gang.

On December 5, 1997, around 6:00 p.m., the victim, 17-year-old Jorge Martinez, was walking on Carl Street right in front of the Project. Martinez was dressed in attire consistent with being a member or associate of the Project Boyz, and was known at least to hang out with the Project Boyz. The victim's friend, 17-year-old Monica Gutierrez, was walking with or near him.

Briefly summarized in the light most favorable to the verdict (*People v. Harvey* (1992) 7 Cal.App.4th 823, 825 [9 Cal.Rptr.2d 17]), the evidence shows: Perez had previously indicated his desire to kill a member of Project Boyz; Perez and Aguilar had been photographed in gang poses indicating a desire or plan to kill a member of Project Boyz; Aguilar drove his blue Lexus automobile along next to the victim; Perez, the passenger, reached out the window and shot the victim with a .357 magnum handgun, inflicting a fatal wound; as the car moved on, it passed directly in front of Gutierrez, who got a good look at both the passenger and the driver; Gutierrez positively identified appellants from mug shot folders shown her by the police, and identified a photo of Aguilar's vehicle as similar to the one she saw; shortly after the crime Aguilar attempted to dispose of his vehicle; the .357 magnum murder weapon was found in Aguilar's residence; and other evidence (ammunition, a glove) consistent with observations at the scene of the crime were recovered from Perez's residence.

Called as a prosecution witness at trial, Monica Gutierrez repeatedly answered "I don't remember" or "I don't recall" to virtually all the questions asked her about what she saw the night of the murder and what she told the police. Police Officer Richard Tompkins testified that Gutierrez told him she was afraid she would be shot if she testified and that she would lie at trial if the prosecution forced her to testify. Gutierrez's prior statements to Officer Tompkins describing the crime and identifying appellants were admitted into evidence as prior inconsistent statements pursuant to Evidence Code section 1235.

Appellants presented alibi defenses. Aguilar also testified that his residence, a converted garage, was easily accessible by friends or fellow gang members in his absence, and he had no idea how his .357 magnum was used as the murder weapon. Aguilar testified he had traded his Lexus to Eulalio Cortes around Thanksgiving, well before the December 5 crime, and had not possessed it or used it since. Eulalio Cortes testified similarly. (However, there was no paperwork corroborating transfer of ownership at this time, and Cortes previously told the police he acquired the vehicle from Aguilar on December 19.) Aguilar also presented various witnesses who gave versions of the crime inconsistent with the circumstances as related in Monica Gutierrez's statements to police.

I

*Confrontation of Witness Monica Gutierrez and Admission of Her Prior Statements to Officer Tompkins Under Evidence Code Section 1235*

Aguilar makes several related contentions based on Monica Gutierrez's testimony professing her lack of recollection of any events surrounding

the crime and of any prior statements she may have made about the crime. He contends as a statutory argument that her testimony consisting only of an inability to recall the circumstances was not "inconsistent" with her prior statements to Officer Tompkins so as to justify admission of her prior statements under Evidence Code section 1235.[1] He contends alternatively as a constitutional argument that even if the statutory exception to hearsay in Evidence Code section 1235 was satisfied, the witness's professed inability at trial to testify to the circumstances rendered cross-examination so ineffective that it denied Aguilar's constitutional right to confront the witness. Aguilar concludes that the trial court should have stricken Gutierrez's testimony altogether on the ground she could not be effectively cross-examined, and the court should not have admitted any evidence of her prior statements to Officer Tompkins. There is no merit to these arguments.

As to the statutory argument, Aguilar acknowledges the rule established in *People v. Green* (1971) 3 Cal.3d 981, 989 [92 Cal.Rptr. 494, 479 P.2d 998], that a trial witness's deliberately evasive forgetfulness is an implied denial of prior statements, which creates "inconsistency in effect" and authorizes admission of the witness's prior statements under Evidence Code section 1235. Aguilar contends the *Green* rule should be limited to cases in which the witness professes selective recollection, because in *Green* the court mentioned the witness's selective recollection in the course of distinguishing the rule of *People v. Sam* (1969) 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700], that "[i]n normal circumstances, the testimony of a witness that he does not remember an event is not 'inconsistent' with a prior statement by him describing that event." (*People v. Green, supra*, 3 Cal.3d at p. 988.)

Contrary to Aguilar's argument, the true point of distinction is not whether the witness selectively remembers some and forgets other circumstances, but rather whether the record supports a finding that the forgetfulness at trial is deliberately evasive. The precise argument now made by Aguilar was rejected in *People v. O'Quinn* (1980) 109 Cal.App.3d 219, 225-226 [167 Cal.Rptr. 141]. There the court held that partial or selective forgetfulness in trial testimony is not a sine qua non of *Green*, but rather, "the true rule under *Green* is that a witness' prior statements are admissible so long as there is a reasonable basis in the record for concluding that the witness' 'I don't remember' responses are evasive and untruthful." (*Id.* at p. 225.) The California Supreme Court approved this formulation of the rule in *People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220 [14 Cal.Rptr.2d 702, 842 P.2d 1], where it cited and adopted *O'Quinn*'s language.

---

[1] "Evidence of a statement by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing . . . ." (Evid. Code, § 1235.)

As to the constitutional argument, Aguilar states in a conclusory way, "Appellant had no effective means of cross-examining the witness." He concludes his "right to confrontation was violated." (U.S. Const., 6th Amend. ["In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"]; Cal. Const., art. I, § 15 ["The defendant in a criminal case has the right . . . to be confronted with the witnesses against the defendant"].) He cites language in *California v. Green* (1970) 399 U.S. 149, 158 [90 S.Ct. 1930, 1935, 26 L.Ed.2d 489], that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."

This argument erroneously equates confrontation with a cross-examination which is effective from a defense point of view. This is not what the constitutional right to confront witnesses requires. In *California v. Green, supra,* 399 U.S. at pages 168-169 [90 S.Ct. at page 1940], the United States Supreme Court left unanswered a question it thought "lurking" in the case, whether the witness's failure at trial to give any version of the important events, due to professed lapse of memory, "so affected Green's right to cross-examine as to make a critical difference in the application of the Confrontation Clause in this case." Justice Harlan's concurring opinion would have reached that issue and concluded that the confrontation clause was satisfied because the witness was on the stand available for cross-examination, and "[t]he fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence." (*Id.* at pp. 172-188 [90 S.Ct. at pp. 1941-1951] (conc. opn. of Harlan, J.).) In his view the confrontation clause, designed to prevent a trial by affidavits of an absent witness, is satisfied by producing the witness at trial for cross-examination. (*Id.* at p. 174 [90 S.Ct. at p. 1943].)

Subsequently, in *United States v. Owens* (1988) 484 U.S. 554 [108 S.Ct. 838, 98 L.Ed.2d 951], the United States Supreme Court adopted Justice Harlan's view. "[W]e agree with the answer suggested 18 years ago by Justice Harlan. '[T]he Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ' " (*Id.* at p. 559 [108 S.Ct. at p. 842], italics added by the *Owens* court.) "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." (*Id.* at p. 560 [108 S.Ct. at p. 843].) When the declarant "is present at trial and subject to unrestricted cross-examination," "the traditional protections of the oath, cross-examination,

and the opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." (*Ibid.*)

*Owens* was anticipated in California by *People v. O'Quinn, supra,* 109 Cal.App.3d 219, 226-228, which concluded there was no violation of the constitutional right to confrontation when, "although [the witness] was ostensibly unable to remember the circumstances of the crime or her statements to the police, she was nevertheless on the stand and available for cross-examination." (*Id.* at p. 228.) *Owens* has been followed by the California Supreme Court. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1292, fn. 32 [18 Cal.Rptr.2d 796, 850 P.2d 1] [also applying its rationale to the confrontation clause in the California Constitution].) Aguilar cites *People v. Rios* (1985) 163 Cal.App.3d 852, 864-866 [210 Cal.Rptr. 271], but *Rios* is distinguishable because there the witnesses refused to answer any questions.

Here Monica Gutierrez testified at length, both under direct examination by the prosecutor and cross-examination by both defense counsel. To each of the prosecutor's questions about either what she observed the night of the crime or what she told the police, she answered, "I don't remember" or "I don't recall." She did admit she was reluctant to testify. Codefendant Perez's counsel cross-examined first. She answered his questions relating to bias, denying that she was a member of or associated with a gang, denying that she had a romantic interest in Officer Tompkins, and admitting that she did not want to talk to Perez's counsel. In fact, Perez's counsel succeeded in piercing her stonewall of "I don't remember" by leading her to testify that Perez was *not* the person who shot the victim. Aguilar's trial counsel next cross-examined the witness for about 25 pages in the transcript. She consistently answered "I don't recall" to numerous questions about the crime or her statements to police, but did answer a question relating to bias, denying that she made a sexual remark about Officer Tompkins.

The witness Gutierrez was not absent from the trial. She testified at length at trial and was subjected to lengthy cross-examination. The jury had the opportunity to observe her demeanor, and the defense cross-examined her about bias. Even though she professed total inability to recall the crime or her statements to police, and this narrowed the practical scope of cross-examination, her presence at trial as a testifying witness gave the jury the opportunity to assess her demeanor and whether any credibility should be given to her testimony or her prior statements. This was all the constitutional right to confrontation required. (*United States v. Owens, supra,* 484 U.S. 554, 558-560 [108 S.Ct. 838, 842-843]; *People v. Cummings, supra,* 4 Cal.4th

1233, 1292, fn. 32; *People v. O'Quinn, supra,* 109 Cal.App.3d 219, 226-228.)[2]

## II-VI*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

As to each appellant, the judgment is modified by striking therefrom the two-year sentence enhancement pursuant to Penal Code section 186.22, subdivision (b)(1). As so modified, the judgments are affirmed.

Hastings, J., and Curry, J., concurred.

Appellants' petitions for review by the Supreme Court were denied November 15, 2000.

---

[2]Aguilar contends the professed memory loss made Gutierrez "unavailable as a witness," implying by this argument that Aguilar was unable to confront the witness. This argument takes out of context language from cases which construed "unavailable as a witness" in Evidence Code section 240, subdivision (a), which is a foundational requirement for admission of certain types of hearsay, such as prior testimony. (Evid. Code, § 1291, subd. (a); *People v. Rojas* (1975) 15 Cal.3d 540, 548-552 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127] [witness refused to take the stand, despite being held in contempt, saying he was afraid due to threats; held the witness was unavailable so as to permit admission of his prior testimony]; *People v. Alcala* (1992) 4 Cal.4th 742, 778-779 [15 Cal.Rptr.2d 432, 842 P.2d 1192] [witness genuinely suffered memory loss after first trial; prior testimony held admissible in second trial].) These situations are not the same as here, where the witness actually testified at trial, was subjected to lengthy actual cross-examination, and the loss of memory was feigned and evasive. In this latter situation, the witness was available for cross-examination within the meaning of the confrontation clause. The United States Supreme Court rejected a similar evidentiary argument in *United States v. Owens, supra,* 484 U.S. at pages 561-564 [108 S.Ct. at pages 843-845]. It said there was no fatal contradiction under the Federal Rules of Evidence that a witness with genuine memory loss could be found "subject to cross-examination" for the purpose of one evidence rule, while at the same time be found "unavailable as a witness" for the purpose of a different evidence rule. "[T]he two characterizations are made for two entirely different purposes and there is no requirement or expectation that they should coincide." (*Id.* at p. 564 [108 S.Ct. at p. 845].)

*See footnote, *ante*, page 760.